IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| RHYS NAKAKURA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>CITY AND COUNTY OF HONOLULU, *et al.*,<br><br>　　　　Defendants. | Case No. 19-cv-00320-DKW-KJM<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

　　　Defendants City and County of Honolulu (City), Nathan Wharton, Courtney Pahia-Lewis, Janghoon Cho, and Tracy Tamondong[1] move for dismissal of the state and federal claims in the Second Amended Complaint (SAC) on various grounds.  With respect to the claim of municipal liability against the City and the conspiracy claim against the Honolulu Police Officer Defendants, the Court agrees that dismissal without further leave to amend is appropriate.  However, as for the remaining claims, the Court finds that they are not barred under *Heck* and, at this stage in the proceedings, sufficient facts have been alleged to state a plausible claim.  Therefore, for the reasons more fully set forth below, the motion to dismiss, Dkt. No. 43, is GRANTED IN PART and DENIED IN PART.

---

[1]Wharton, Pahia-Lewis, Cho, and Tamondong are, collectively, the Honolulu Police Officer Defendants and, with the City, are the Defendants.

## RELEVANT FACTUAL BACKGROUND

Nakakura alleges the following relevant facts in the SAC.  On June 23, 2017, he was in the area of Fort DeRussy, Waikiki, while, at the same time, Wharton, Pahia-Lewis, Cho, and Tamondong were also in the area addressing peddling violations.  SAC at ¶¶ 28-29, Dkt. No. 41.  At some point, Tamondong saw Nakakura standing next to a table with "LED lit objects" on it.  Id. at ¶ 30.  As Cho, dressed in plain clothes, approached Nakakura to investigate if a peddling violation was taking place, Cho observed a crowd of people around Nakakura and "light up helicopters" on the table.  Id. at ¶¶ 31-33.  According to Cho, Nakakura told him that the helicopters were $10 for three or $20 for nine.  Id. at 35.  Cho "allegedly" gave Nakakura a "pre-recorded" $20 note, which Nakakura placed in his shirt pocket, and Nakakura handed Cho three helicopters and a $10 note.  Id. at ¶¶ 36-37.  Cho informed Pahia-Lewis and Tamondong about the transaction, and Pahia-Lewis approached Nakakura, identified herself, and told Nakakura why he was being detained.  Id. at ¶¶ 38-39.  Pahia-Lewis asked Nakakura for identification, and Nakakura produced an identification card for the "Polynesian Kingdom of Atooi."  Id. at ¶ 40.  Tamondong then told Nakakura that he was being arrested.  Id. at ¶ 41.  As Nakakura was turning to address Tamondong, Tamondong and Pahia-Lewis grabbed him by his shoulders and forced him to the

ground, pushing his face into the sand.  *Id*. at ¶ 42.  Cho assisted by placing Nakakura into a headlock and pushing him into the ground, while Wharton grabbed Nakakura's legs.  *Id*. at ¶¶ 43-44.  At no time did Nakakura resist.  *Id*. at ¶ 57.  As a result of the force used, Nakakura sustained injury to his right shoulder, vomited, and coughed up sand.  *Id*. at ¶ 45.  The Honolulu Police Officer Defendants took Nakakura to a hospital, and a doctor evaluated him, determining that Nakakura had "pain to the right shoulder, vomiting, and foreign body in mouth."  *Id*. at ¶¶ 46, 56.  After being discharged from the hospital, Nakakura was taken to a police station for processing.  *Id*. at ¶ 47.  At the time he was booked, Nakakura did not have in his possession the "prerecorded" $20 note, and Cho did not enter into evidence the $10 note that Nakakura "allegedly" gave him as change.  *Id*. at ¶¶ 49, 53.  The Honolulu Police Officer Defendants also failed to enter into evidence the "light up helicopters" Nakakura "allegedly" peddled.  *Id*. at ¶ 54.  Nakakura alleges that the Honolulu Police Officer Defendants generated "false reports" in order to "cover-up" their own conduct.  *Id*. at ¶¶ 58-59.

## **RELEVANT PROCEDURAL BACKGROUND**

On April 23, 2020, the Court entered an Order granting in part and denying in part a motion to dismiss Nakakura's First Amended Complaint.  Dkt. No. 37.

In doing so, the Court also provided Nakakura with leave to amend certain of his claims.

On May 21, 2020, Nakakura filed the SAC, asserting six claims for relief pursuant to Sections 1983 and 1985 of Title 42 of the U.S. Code: (1) violation of his rights under the Fourth Amendment against the Defendants (Claim One); (2) conspiracy to violate his constitutional rights against the Honolulu Police Officer Defendants (Claim Two); (3) assault and battery against the Honolulu Police Officer Defendants (Claim Three); (4) gross negligence or negligence against the Honolulu Police Officer Defendants (Claim Four); (5) negligent or intentional infliction of emotional distress against the Honolulu Police Officer Defendants (Claim Five); and (6) false imprisonment against the Honolulu Police Officer Defendants (Claim Six).

On June 4, 2020, Defendants filed the instant motion to dismiss. Dkt. No. 43. Nakakura has filed an opposition to the motion to dismiss, Dkt. No. 48, and Defendants have filed a reply, Dkt. No. 50. This Order now follows.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court "must accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886-887 (9th Cir. 2018) (quotation omitted).  In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

When a complaint fails to state a plausible claim, leave to amend should be given when "justice so requires."  Fed.R.Civ.P. 15(a)(2).  Justice does not require leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile,

or (5) there has been repeated failure to cure a deficiency. *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

## DISCUSSION

The Court addresses each of the claims asserted in the SAC, and the relevant arguments from the parties related thereto, in turn.

**1.  Claim One**

    **A.  Against the City**

In order to bring a claim under Section 1983 against a municipality, such as the City, a constitutional violation must result from a policy or custom of the municipality. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1216 (9th Cir. 1996). A plaintiff can allege the foregoing in one of three ways. First, a municipality can be liable when it or a person with final policymaking authority within the municipality expressly enacts or authorizes a policy respecting a challenged action. *Monell v. Dep't of Soc. Services of the City of New York*, 436 U.S. 658, 690 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-483 (1986) ("The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable."). Second, a municipality can be liable for a custom that, although not expressly

enacted, is "so permanent and well settled" it operates with the force of law. *Monell*, 436 U.S. at 691 (quotation omitted).   Third, a municipality can be liable for a failure to train its employees when such failure amounts to deliberate indifference towards the rights of its inhabitants.  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).   In addition, a plaintiff must allege that a policy, custom, or failure to train actually caused a municipality's employee to commit the constitutional deprivation.  *Id*. at 391; *Monell*, 436 U.S. at 694.

    Here, in the SAC, much like in the FAC, little effort is made to plead a non-conclusory claim of municipal liability.  *See* Dkt. No. 37 at 7 (discussing the deficiencies in the FAC with respect to municipal liability).   Notably, in the SAC, Nakakura merely conclusorily asserts that the City failed to train its officers, failed to "enforce the laws of the State of Hawaii," failed to "issue rules of the Police Manual[,]" issued "vague, confusing, and contradictory policies" concerning the use of force, and permitted a policy and custom of unreasonable force.   SAC at ¶¶ 63-64.   None of these assertions is supported by *any* factual allegations, such as the training that was not provided to officers, the laws that have not been enforced, the rules that were not issued from the police manual, the policies that were allegedly contradictory, or how the City permitted its officers to use unreasonable

force.  Instead, bald statements are made as if they alone suffice.  That is not the case.  *See Iqbal*, 556 U.S. at 678.

The closest Nakakura gets to alleging facts related to a purported policy or custom is his contention that the City received "donated" funds from businesses allegedly seeking to have the City's peddling laws enforced.  *See* SAC at ¶ 64.  That contention, however, does little to save Nakakura's *Monell* claim because the alleged policy or custom of receiving funds from private businesses to enforce peddling laws has absolutely no relationship to the action challenged here–namely, the allegedly excessive force used against Nakakura during his arrest.  *See Monell*, 436 U.S. at 690, 694; *City of Canton*, 489 U.S. at 391.[2]

In addition, the claim that the City failed to train its officers suffers from another deficiency.  Apart from the fact that the alleged training failures are not identified, nowhere in the SAC are there alleged any facts suggesting that the unidentified failures to train amounted to the City's deliberate indifference toward Nakakura's constitutional rights.  For example, Nakakura points to not one prior incident of a similar alleged constitutional violation resulting from any alleged

---

[2]The Court notes that the other alleged policies and customs discussed above suffer from the same deficiency–the failure to allege any causality between the policy or custom and the alleged constitutional violation.  The same is true of the purported policy of "failing to properly follow evidence booking procedures[,]" Dkt. No. 48-1 at 8, which is asserted as a policy for the first time in Nakakura's opposition.

failure to train the City's officers. *See Connick v. Thompson*, 563 U.S. 51, 61 (2011) (explaining that "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.") (quotation omitted).

As a result, the claim of municipal liability alleged in the SAC against the City must be dismissed. Further, having already provided Nakakura, who is represented by counsel, leave to amend this claim, no additional opportunity is justified or will be provided. This claim as asserted against the City is dismissed with prejudice.

### B. The Honolulu Police Officer Defendants

In their motion to dismiss, the Honolulu Police Officer Defendants move to dismiss Nakakura's Fourth Amendment claim of excessive force on the ground that it is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994),[3] because Nakakura pled no contest to resisting arrest.[4] Dkt. No. 43-1 at 17, 19-20. In opposition, Nakakura argues that his criminal case was dismissed with prejudice after the state

---

[3]Defendants also move to dismiss Nakakura's conspiracy claim (Claim Two) on *Heck* grounds. As discussed below in Section 2, however, the Court dismisses Nakakura's conspiracy claim for different reasons.

[4]*Heck* is additionally the reason that the Honolulu Police Officer Defendants cite for dismissing Nakakura's assault and battery claim (Claim Three). Accordingly, the discussion of *Heck* herein is equally applicable to Claim Three.

trial court deferred acceptance of his no-contest plea and, thus, there is no judgment of conviction that would bar his claims. Dkt. No. 48-1 at 16-17. The Court agrees with Nakakura.

In *Heck*, the Supreme Court held that, in order for a plaintiff to recover damages for an allegedly unconstitutional conviction or imprisonment, "or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," he must prove that the conviction or sentence has been, *inter alia*, reversed on direct appeal or called into question by the issuance of a writ of habeas corpus. 512 U.S. at 486-487.

Here, *Heck* does not apply because the record reflects that Nakakura was never *convicted* of any crime related to the events at issue in the SAC.[5] The record, instead, reflects that Nakakura pled no-contest to, *inter alia*, resisting arrest, Dkt. No. 43-3 at 5, the state trial court granted his motion for deferred acceptance of the plea, *id.*, and, six months later, the same court ordered the dismissal of the charges against Nakakura after he complied with all of the conditions imposed by the court, Dkt. No. 49-2. Having dismissed the charges against Nakakura, pursuant to Hawai'i law, there is simply no conviction that has been entered for the charges to which he pled no contest, including resisting arrest.

---

[5]As Defendants request, the Court takes judicial notice of the docket, Dkt. No. 48-3, and the motion for discharge and dismissal, Dkt. No. 49-2, described therein.

*See* Haw. Rev. Stat. § 853-1(d) ("Discharge of the defendant and dismissal of the charge against the defendant under this section shall be without adjudication of guilt, shall eliminate any civil admission of guilt, and is not a conviction."). Therefore, there is no *conviction* pursuant to which *Heck* could bar Nakakura's excessive force or assault claims. *See Shay v. City of Huntington Beach*, 2018 WL 6016151, at *2 (C.D. Cal. Sep. 25, 2018) (explaining that, in cases of deferred prosecution or deferred acceptance, "the defendant is never convicted unless he fails to complete the required program, and *Heck* does not bar claims under § 1983.") (quotation omitted) (citing *Medeiros v. Clark*, 713 F. Supp. 2d 1043, 1056 (E.D. Cal. 2010)).⁶ In addition, Defendants' assertion that Nakakura stipulated to certain unknown facts underlying the charges to which he pled no contest does not change the analysis. *See* Dkt. No. 50 at 9. *Heck* does not bar a plaintiff from bringing a claim that may (or may not) run contrary to certain facts to which he stipulated.⁷ *Heck* bars a claim that runs contrary to a conviction or sentence.

---

⁶Defendants' citation to this Court's decision in *Kriege* (Dkt No. 43-1 at 18) is inapposite, given that, in *Kriege*, there was no indication that the charges to which the plaintiff pled no contest had been dismissed. The same is true of their citations to *Kyles v. Baker*, 72 F. Supp. 3d 1021 (N.D. Cal. 2014), and *Szajer v. City of Los Angeles*, 632 F.3d 607 (9th Cir. 2011). Neither of those decisions appear to have involved deferred acceptance of a no-contest plea or the dismissal of the underlying charges. *Szajer*, 632 F.3d at 609; *Kyles*, 72 F. Supp. 3d at 1026, 1030.
⁷Defendants' stipulation of facts argument, *see* Dkt. No. 50 at 7-9, is of no assistance to Defendants for another reason. The Court has *no idea* of the facts to which Nakakura stipulated. For instance, the Court is unable to determine on the current record whether the Honolulu Police Officer Defendants' alleged force against Nakakura occurred before, during, or after the resistance to arrest to which Nakakura allegedly stipulated. *See Strong v. Pettengell*, 808 F.

*Heck*, 512 U.S. at 486-487. As a result, the motion to dismiss is denied with respect to both Claim One as against the Honolulu Police Officer Defendants and Claim Three.

## 2. **Claim Two**

In Claim Two, Nakakura alleges that the Honolulu Police Officer Defendants conspired with each other to deprive him of his constitutional rights. More specifically, Nakakura alleges that they conspired, *inter alia*, to prepare police reports in order to justify their conduct.

To state a civil rights conspiracy claim under Section 1985(3), however, a plaintiff must allege that the conspiracy was based upon a racial animus or an animus directed at some other protected class. *Holgate v. Baldwin*, 425 F.3d 671, 676 (9th Cir. 2005). Here, Nakakura does not even contend that he has made any such allegation, nor can one be discerned from the SAC. There is simply no allegation that the Honolulu Police Officer Defendants conspired with each other or did so for any racial or other class-based reason. Therefore, this claim must be dismissed. In addition, because Nakakura agrees, in his opposition, that this claim should be dismissed (albeit without prejudice), *see* Dkt. No. 48-1 at 15, the Court

---

App'x 514 (Mem) (9th Cir. June 9, 2020) ("However, it is not clear from the face of the complaint or the fact of his guilty plea that his excessive force claim would necessarily call into question the validity of his conviction, because the specific factual basis for his guilty plea is not in the record.").

declines to grant leave to amend this claim and, therefore, dismisses it with prejudice.[8]

### 3. Claims Four and Five

#### A. Negligence Claims

Defendants move to dismiss Nakakura's claims of negligence (Claim Four) and negligent infliction of emotional distress (Claim Five) on two grounds: (1) they are entitled to a state law-based "conditional privilege"; and (2) the allegations in the SAC do not support claims for negligence. Dkt. No. 43-1 at 20-23.

At this stage in the proceedings, the Court is unpersuaded by either of Defendants' arguments. As to conditional privilege, as Defendants acknowledge, the undersigned has already spoken on this matter when presented at an early stage of litigation, and has found that the privilege's requirement of malice does not necessarily preclude a claim of negligence. *See* Dkt. No. 43-1 at 21 n.6 (citing *Franson v. City & Cty. of Honolulu*, 2016 WL 4007549, at *8-9 (D. Haw. July 26, 2016)). Nothing has changed since *Franson* to alter that conclusion. As for the sufficiency of Nakakura's allegations, when viewed in the light most favorable to

---

[8]As a result, the Court need not address Defendants' other asserted reasons for dismissing this claim, such as their assertion that they are entitled to qualified immunity. *See* Dkt. No. 43-1 at 11-15.

13

him, the Court finds that plausible claims of negligence and/or negligent infliction of emotional distress, as well as malice, are alleged. Among other things, Nakakura alleges that he was forced to the ground by four police officers with his head buried in sand causing him to vomit, even though he did not resist or do anything more than allegedly peddling inexpensive items on the beach.

### B. Intentional Infliction of Emotional Distress

Much the same logic produces the same result with respect to Defendants' argument for dismissal of Claim Five to the extent it asserts a claim of intentional infliction of emotional distress. At this stage in the proceedings, when the Court must view the facts alleged in the light most favorable to Nakakura, the Court also finds that the SAC plausibly alleges "outrageous" conduct–namely, the same conduct just outlined above–on the part of the Honolulu Police Officer Defendants for purposes of this claim.

As a result, the motion to dismiss is denied with respect to Claims Four and Five.

### 4. Claim Six

Defendants' argument for dismissal of the false imprisonment claim is premised upon facts that are not alleged in the SAC. Specifically, Defendants

argue that Nakakura cannot allege that he was falsely imprisoned when he was lawfully arrested for peddling. Dkt. No. 43-1 at 24-25; Dkt. No. 50 at 13-14. The SAC does not allege, however, that Nakakura was lawfully arrested for peddling. In fact, although the SAC is careful in alleging whether or not a peddling violation occurred, viewed in Nakakura's favor, the SAC does not allege that Nakakura was validly arrested. Moreover, as discussed above, *Heck* does not bar Nakakura's claims in this case and, to the extent Nakakura's stipulation in the state criminal proceeding is relevant, the Court has not been provided with the stipulated facts.

As a result, the motion to dismiss is denied with respect to Claim Six.

## **SUMMARY**

The Court summarizes the foregoing as follows:

1) Claim One is DISMISSED WITH PREJUDICE with respect to the City, but remains with respect to the Honolulu Police Officer Defendants;

2) Claim Two is DISMISSED WITH PREJUDICE; and

3) Claims Three, Four, Five, and Six remain.

## **CONCLUSION**

For the reasons set forth herein, the motion to dismiss, Dkt. No. 43, is GRANTED IN PART and DENIED IN PART.

IT IS SO ORDERED.

Dated: July 13, 2020 at Honolulu, Hawai'i.

Derrick K. Watson
United States District Judge

<u>Rhys Nakakura v. City and County of Honolulu, et al;</u> Civil No. 19-00320 DKW-KJM; **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**